Behrooz P. Vida, SBOT No. 20578040
Carla Reed Vida, SBOT No. 16674445
Helenna Bird, SBOT No. 24085205
THE VIDA LAW FIRM, PLLC
3000 Central Drive
Bedford, Texas 76021
Tel: (817) 358-9977
Fax: (817) 358-9988
ATTORNEYS FOR TAMAMOI, LLC and FDRE, INC.

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| IIN RE | § | Chapter 11 |
| WALL010, LLC, | § | Case No. 21-30016-hdh |
| Debtor | § | |

---

# **OBJECTION TO DISCLOSURE STATEMENT**

TO THE HONORABLE JUDGE OF THE SAID COURT:

TAMAMOI, LLC, a Delaware limited liability company ("**Tamamoi**") and FDRE, INC., an Oregon corporation ("**FDRE**") (collectively "**Movant**"), file this *Objection to Disclosure Statement* (the "**Objection**"), against WALL010, LLC ("**Debtor**"), and would respectfully show the Court as follows:

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §157 and §1334.

2. This is a core proceeding. This Motion constitutes a contested matter pursuant to Rule 9014 of the Bankruptcy Rules.

3. This motion is brought pursuant to 11 U.S.C. §§ 105, 1125.

Background Facts

4. Movant is the mortgagee on Debtor's unimproved real estate (the "**Land**").

5. Debtor's bankruptcy case qualifies as a single asset real estate bankruptcy case.

6. Movant agreed on a short-term basis to finance the purchase of the Land for Carnegie Development, LLC, a Delaware limited liability company, ("**Carnegie**").

7. On December 28, 2018, Carnegie through Timothy Barton, its manager, signed a Promissory Note in the amount of $2,000,000.00 (the "**Promissory Note**") and executed a Deed of Trust (the "**Deed of Trust**"), which was recorded on January 4, 2019. Also, Timothy Barton personally guaranteed Carnegie's indebtedness to Movant.

8. The Promissory Note interest rate was 11.5% and it matured on June 27, 2020. Also, on matured and unpaid amounts the Promissory Note required the lesser of 18% or the Highest Lawful Rate permitted by law.

9. Carnegie defaulted under the terms of the Promissory Note.

10. On April 11, 2020, Movant sent to Carnegie its notice of intent to accelerate.

11. Movant posted the Land for the July 7, 2020, foreclosure date.

12. Unbeknownst to Movant, Carnegie allegedly transferred the Land to Debtor for payment of an alleged antecedent debt owed by Carnegie to Debtor.

13. On April 8, 2020, a group of creditors petitioned the Court for an involuntary bankruptcy proceeding against Debtor and a few of its affiliates. The cases were jointly administered as Case No. 20-31131-hdh7 and the Debtor was assigned Case No. 20-31134 (collectively the "**Involuntary Case**").

14. Starting the day before foreclosure, July 6, 2020, Debtor through Joyce Lindauer, Esq., bankruptcy counsel for the Debtor, took steps towards stopping Movant's foreclosure on the Land.

15. Eventually, on July 7, 2020, for the first time ever, Carnegie and Debtor, through Timothy Barton and Vance McMurry, Esq., provided the following documents to Movant:

1) Promissory Note allegedly executed between Carnegie and Debtor on July 16, 2018.
2) Written Consent in Lieu of Special Meeting of Wall010, LLC, allegedly executed on December 30, 2018.
3) Unrecorded Warranty Deed transferring the Land from Carnegie to Debtor allegedly executed on January 14, 2019.

16. Carnegie transferred the Land to Debtor despite provisions in the Deed preventing the transfer.

17. On July 17, 2020, Movant filed a motion for relief from stay in the Involuntary Case. [*See* ECF No. 86 in Case No. 20-31131].

18. On August 18, 2020, this Court entered an interim order requiring Debtor to pay a single adequate protection of $30,000.00 to Movant. [*See* ECF No. 152 in Case No. 20-31131]. Debtor complied.

19. On October 7, 2020, Movant amended its motion for relief from stay. [*See* ECF No. 179 in Case No. 20-31131].

20. On November 3, 2020, this Court held a final hearing on Movant's amended motion for relief from stay and at the conclusion of the hearing the Court took the matter under advisement. [*See* ECF No. 270 in Case No. 20-31131].

21. On November 16, 2020, this Court entered an order conditioning the stay. [*See* ECF No. 268 in Case No. 20-31131]. Under the Court's order, Debtor was required to make payments of $30,000.00 to Movant on November 19, 2020 and December 19, 2020. Debtor only made the first payment to Movant.

22. On December 7, 2020, the Involuntary Case was dismissed without prejudice. [*See* ECF No. 270 in Case No. 20-31131].

23. Debtor continued to refuse to pay to Movant the total amount owed under the Promissory Note. Movant posted the Land for foreclosure on January 5, 2021.

24. On January 4, 2021, Debtor filed the instant voluntary bankruptcy case to stop Movant's foreclosure scheduled for January 5, 2021.

25. Since the Promissory Note had already matured and remained unpaid as of the petition date of this pending bankruptcy case, Movant filed its motion for relief from stay. [*See* ECF No. 8]. Debtor timely opposed the motion for relief from stay. [*See* ECF No. 21]

26. After having held a preliminary hearing, on February 1, 2021, this Court entered its interim order conditioning the automatic stay. [*See* ECF No. 29].

<u>Objection to Disclosure Statement</u>

27. On January 21, 2021, Debtor filed its Plan, [*See* ECF No. 22], and its Disclosure Statement. [*See* ECF No. 23].

28. Debtor's Disclosure Statement does not contain adequate information to permit creditors to make an informed decision to accept or reject the Plan. Accordingly, the Court should deny the Debtor's request to approve the Disclosure Statement.

29. The Disclosure Statement should not be approved because it fails to provide adequate information that would enable the Movant—or any other creditor—to make an informed judgment as to whether to vote in favor of the Plan as required by § 1125 of the Bankruptcy Code.

30. Bankruptcy Code § 1125(a)(1) provides that before a plan proponent may

solicit votes on a plan, it must provide holders of claims or interests with a disclosure statement approved by the court as containing adequate information to enable "a hypothetical investor of the relevant class to make an informed judgment about the plan . . . ." 11 U.S.C. § 1125(a)(1). The determination as to what constitutes adequate information must be made on a case-by-case basis. *See Mabey v. Sw. Elec. Power Co. (In re Cajun Elec. Power Coop., Inc.),* 150 F.3d 503, 518 (5th Cir. 1998). However, § 1125 of the Bankruptcy Code requires factual predicates for all assertions contained in the Disclosure Statement and "opinions without factual support are not proper content of a disclosure statement and do not provide the parties voting on the plan with adequate information." *In re Fierman*, 21 B.R. 314, 315 (Bankr. E.D. Pa. 1982) (citations omitted). In essence, a disclosure statement must clearly and succinctly inform the average creditor what it is going to get, when it is going to receive it, and what contingencies

31. Information that should be contained in a disclosure statement includes:

> [a] complete description of the available assets and their value; . . . [a] liquidation analysis setting forth the estimated return that creditors would receive under Chapter 7; [t]he accounting and valuation methods used to produce the financial information in the disclosure statement; [i]nformation regarding the future management of the debtor, including the amount of compensation to be paid any insiders, directors, and/or officers of the debtor; . . . [and] [i]nformation relevant to the risks being taken by creditors and interest holders . . . .

*In re Scioto Valley Mortgage Co.,* 88 B.R. 168, 170-71 (Bankr. S.D. Ohio 1988). Further, the proponent of the plan (in this case, the Debtor) bears the ultimate burden of persuasion on the adequacy of the disclosure statement. *In re Michelson*, 141 B.R. 715, 718-19 (Bankr. E.D. Cal. 1992).

32. In this particular case, Debtor has failed to provide adequate information

relating to the Plan, which creditors need to make an informed judgment as to whether to vote to accept or reject the Plan.

33. In addition, the Disclosure Statement does not provide adequate information regarding the proposed funding of the Plan. The Disclosure Statement simply states: "On or about Confirmation of the Plan the Debtor will obtain an interim loan in the approximate amount of $1,000,000.00 to fund the Debtor's operations…." [*See* ECF No. 23, page 16 of 46, Article VII, ¶ 7.01]. The Disclosure Statement fails to disclose: (a) the name of the lending party, (b) the duration of the loan, (c) the interest rate of the loan, (c) whether the loan will be secured or unescured. Debtor admits that the Land has a liquidation value of less than $1,600,000 yet fails to explain why is it that the unknown lender is willing to loan Debtor $1,000,000 when the Land is already encumbered by a secured loan with a payoff exceeding $2,200,000. Despite making the representation that it will obtain a loan in the amount of $1,000,000, Debtor's Exhibit B indicates that Debtor can only take limited draws against this alleged $1,000,000 loan. [*See* ECF No. 23, page 40 of 46]. The restrictions associated with the loan are not discussed or explained in the Disclosure Statement. The Disclosure Statement fails to disclose how crucial the loan is to its ability to have a feasible plan and what will happen if Debtor is unable to obtain the $1,000,000 loan.

34. The Disclosure Statement in three different places addresses how the plan will be funded: (1) "The funds necessary to fund the Plan will come from the ongoing sale of preliminarily-platted lots."[*See* ECF No. 23, page 17 of 46, Article IX, ¶ 9.01], (2) "The payments will be funded by the Debtor's sale of developed residential lots to homebuilders and others for profit."[*See* ECF No. 23, page 16 of 46, Article IX, ¶ 7.01], and (3) "The Plan contemplates that the sale of lots will generate income sufficient to pay the Debtor's

obligations under the Plan." [*See* ECF No. 23, page 18 of 46, Article XI, ¶ 10.01].

35. Debtor's Exhibit B indicates that the "Engineering & Entitlement" for the Land will take 12 months. Therefore, Debtor has failed to disclose that the funds necessary from the sale of the preliminarily-platted lots needed to fund the Plan, are not likely to materialize for at least 12 months while the Land will be undergoing "Engineering & Entitlement." Debtor fails to explain how it came up with a 6-month duration [*See* ECF No. 23, page 39 of 46] for selling its lots when it does not seem to have budgeted for a sales force for the handling of the sales and the associated expenses.

36. The Disclosure Statement lacks specifics relating to Debtor's operations. The only information Debtor provides is that the "Debtor's current operations will be reflected in its monthly operating reports filed with the Court." [*See* ECF No. 23, page 11 of 46, Article III, ¶ 3.03]. There is no explanation regarding the actual current operations nor Debtor's plans for business operations on a go-forward basis.

37. The Disclosure Statement also fails to provide other information essential to evaluating the Plan, such as: (a) Disclosure with respect to administrative claims, such as professional fees to date and such fees and operating costs to be incurred by the Effective Date and after confirmation [*See* ECF No. 23, page 14 of 46, Article VI, ¶ A]; (b) Disclosure of the basis for the Land to have been valued at $4,600,000 by Debtor when its value according to the first lienholder is only $1,600,000, [*See* ECF No. 23, page 12 of 46, Article IX, ¶ 4.01]; (c) Disclosure of any potential causes of action, if any, that are being vested in the Reorganized Debtor, [*See* ECF No. 23, page 17 of 46, Article IX, ¶ 9.01]; (d) Disclosure of any releases of the Debtor, insiders, and/or related parties; and (e) Disclosure of the identity of the individual(s)who will serve on the management of the reorganized Debtor, the expected level of compensation for these individual(s) [*See* ECF No. 23, page 11 of 46, Article IX, ¶ 3.04]; and

(f) create a definition for the term "Managing Member" which is currently undefined in the Disclosure Statement and specify the scope of authority for the position.

38. The Disclosure Statement falls short of providing adequate information for a creditor to make an informed decision about the Plan, and should, therefore, not be approved.

WHEREFORE, PREMISES CONSIDERED, Movant prays for an order of the Court denying approval of the Disclosure Statement and granting such other and further relief as is just.

Respectfully submitted:

By: /s/ Behrooz P. Vida 2/26/2021

Behrooz P. Vida
State Bar No. 20578040
Carla Reed Vida
State Bar No. 16674445
Helenna Bird
State Bar No. 24085205
THE VIDA LAW FIRM, PLLC
3000 Central Drive
Bedford, Texas 76021
EMAIL: filings@vidalawfirm.com
TEL: (817) 358-9977
FAX: (817) 358-9988

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above and forgoing instrument was served on the date that the instrument was filed electronically. Service was accomplished electronically and/or by first class mail to the parties indicated below.

| | |
|---|---|
| WALL007 LLC, Debtor<br>c/o Carnegie Development, LLC<br>13901 Midway Rd., Ste. 102<br>Dallas, TX 75244 | VIA US MAIL |
| Joyce W. Lindauer<br>Joyce W. Lindauer Attorney, PLLC<br>1412 Main Street, Suite 500<br>Dallas, TX 75202 | VIA ECF |
| Parties Having Filed NOA | VIA ECF |
| Office of United States Trustee | VIA ECF |

/s/ Behrooz P. Vida 2/262021
Behrooz P. Vida
Carla R. Vida
Helenna Bird